There have been no important changes in the law since the publication of compilations distributed in 1856, except such as are included in 5th edition of the Revised Statutes, which is the edition here referred to.

Respectfully yours,

THOMAS HILLHOUSE, Comptroller."

---

## DYER, administrator, &c. *vs.* DYER and others.

Where, upon an application by an administrator, to the surrogate, for leave to mortgage or sell the real estate of the intestate, a claim of the respondent, against the estate, which was disputed by the administrator, was tried by the surrogate, and after several witnesses had testified to conversations between the intestate and the claimant, which established a "transaction" between them, in relation to the subject matter of the controversy; *Held* that the claimant could not be examined as a witness to prove that no such conversations had occurred—that no such transactions had taken place; such testimony being "in respect to a transaction had personally between the deceased person and the witness."

THIS was an appeal from a decree of the surrogate of the county of Albany, in which he allowed a claim of Hannah A. Dyer, one of the respondents, against the estate of the intestate.

The proceedings were commenced by the administrator, for the purpose of obtaining leave to mortgage, or sell, the real estate of the intestate, for the payment of his debts.

Upon the return of the order to show cause, the administrator gave a schedule of debts, and among them was the claim of the respondent Hannah A. Dyer, for work and labor of herself and her son, for the intestate, which was disputed by the administrator. The surrogate proceeded to try the validity of the claim. It appeared that the claimant was a sister of the intestate, and the services were rendered while she and her son, who was a minor, were residing in his family, and constituting a portion of it, on his farm in Westerlo, Albany county. The administrator introduced several witnesses who testified that on numerous occasions the deceased had told Hannah to leave, and that he would not pay her any thing for staying with him. The respondent was examined in reference to these conversations between her and the deceased. Objection was made upon the ground that the evidence tended to show a transaction between herself and the deceased. The objection was overruled, and the testimony admitted by the surrogate, to which the administrator's counsel duly excepted. Other evidence was received, and questions raised, not material to be stated. And, after due consideration, the surrogate made a decree allowing the claim of the respondent, at $535, and all the costs and expenses of the administrator and of the respondent's counsel. From this decree an appeal was taken, by the administrator, to the general term.

The case was submitted upon printed points.

*R. W. Peckham, Jun.* for the appellant.

*Henry Smith,* for the respondent.

*By the Court,* MILLER, J. I think that the surrogate erred in admitting the evidence of the respondent to contradict the testimony introduced to prove conversations between her and the deceased.

Section 399 of the Code, as it was in force in 1866, at the time of the hearing before the surrogate, provides for the

examination of a party " as a witness in his own behalf, or in the behalf of any other party," &c. " except that a party shall not be examined against parties who are representatives of a deceased person, in respect to any transactions had personally between the deceased person and the witness." While this provision allowed parties to be sworn as witnesses, the exception was intended to close the mouth of the living party, in all cases where the other party was deceased. It was designed to prevent a party from testifying as to any transaction where the other party had no opportunity to be sworn and to give his version of the matter. This object would be entirely defeated if, after proof by disinterested witnesses of a transaction occurring between two parties, one of whom was deceased, the party still alive should be permitted to come upon the stand and testify that no such transaction took place.

It is very evident that the conversations proved upon the hearing to have occurred between the deceased and the claimant related to a transaction between them, and was within the exception contained in the provision of the Code above cited. The evidence of the claimant also bore upon the same transaction. The latter tended to prove the incorrectness and the falsity of the evidence introduced by the administrator upon the hearing to establish the transaction. It showed that no such transaction had taken place ; that no such conversations had transpired.

The testimony admitted clearly was " in respect to a transaction had personally between the deceased person and the witness." Before it can be fairly claimed that it was not, it must be assumed, I think, without authority, that there was no such proof as that introduced, or that it was false and untrue. This, I think, is not warranted upon any reasonable hypothesis.

It is said that proof that no such transaction occurred, is not an examination in respect to such a transaction. After a careful examination of this position, I am of the opinion that it is not a satisfactory answer to the objection urged to

Dyer *v.* Dyer.

the testimony. Several witnesses had testified to conversations which established a transaction between the parties, in relation to the subject matter of the controversy before the surrogate, and there was at least *prima facie* evidence of its existence. It was certainly established until proof was introduced to the contrary, and without such proof must be thus regarded. It is therefore no answer to say, that the evidence received did not relate to the transaction, because it proved that none such existed. It was " in respect" to the transaction ; and it might as well be claimed that as the occasions when the alleged conversations between the parties took place had been identified by the witnesses on both sides, that proof contradicting the material facts did not relate to the transaction itself, but only showed that it never happened.

It would, I think, be an evasion of the spirit and scope of this provision of the Code to hold that proof contradicting the evidence introduced had no relation to the transaction which had been established by the witnesses introduced by the administrator, because it proved that no such transaction had ever taken place.

The evidence admitted was material, and may have had a decided influence upon the decision of the case. As it was erroneously received, and for this error the proceedings must be reversed, it is not essential to examine the other questions raised.

Decree of the surrogate reversed, with costs to abide the event, and the case remitted to the surrogate for further proceedings therein.

[ALBANY GENERAL TERM, December 3, 1866. *Miller, Ingalls* and *Hogeboom,* Justices.]